Michael Sidney LUFT,
Plaintiff–Appellee,

v.

CROWN PUBLISHERS, INC.,
Audiofidelity Enterprises,
Inc., Defendants.

Appeal of Daniel PUGLIESE,
Defendant–Appellant.

No. 1419, Docket 90–7136.

United States Court of Appeals,
Second Circuit.

Argued June 6, 1990.

Decided June 22, 1990.

James J. Harrington (James P. Lynn, Haythe & Curley, New York City, on the brief), for plaintiff-appellee.

David M. Rubin (Stewart L. Levy, Terrance L. Kawles, Eisenberg, Tanchum, Rubin & Levy, New York City, on the brief), for defendant-appellant.

Before KEARSE, WINTER, and WALKER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Daniel Pugliese appeals from a final judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge*, awarding plaintiff Michael Sidney Luft $102,147.64 in damages, attorney's fees, and costs for copyright infringement. Damages were assessed after the district court, pursuant to Fed.R.Civ.P. 37(b), struck defendants' answer on the ground that they had failed to comply with discovery orders. On appeal, Pugliese contends that the district court abused its discretion in striking the answer and erred in assessing damages solely against him and in awarding attorney's fees. For the reasons below, we conclude that the court did not make sufficient findings to justify striking the answer, and we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Luft, a former husband of Judy Garland and owner of certain copyrights relating to a series of television shows featuring Garland, brought the present action in 1985 against defendants Crown Publishers, Inc. ("Crown"), Audiofidelity Enterprises, Inc. ("Audiofidelity"), and Pugliese, president of Audiofidelity from 1980 to 1988, alleging that defendants were manufacturing and selling records and tape recordings that infringed those copyrights. Defendants claimed that Audiofidelity had acquired the rights to the recordings pursuant to a 1983 agreement with one George Tucker who purported to have acquired the rights pursuant to a sheriff's sale in Westchester County in 1969. It now appears to be

conceded that the sheriff's sale was ineffective to convey the copyrights to Tucker; thus Tucker's conveyance to Audiofidelity was also ineffective.

In November 1985, Luft served a request for document production, "request[ing] that each defendant produce and permit plaintiff to inspect and copy" several categories of documents, including "[a]ny document which refers or relates to the manufacture, sale, distribution or marketing of phonograph records or tapes containing performances by Judy Garland" (category 1), and "[a]ny document which refers or relates to each defendant's acquisition of the right to manufacture, sell, distribute or market phonograph records or tapes of such performances" (category 3). In response to category 3, defendants objected on grounds of vagueness and overbreadth, but produced a copy of the pertinent agreement between Tucker and an Audiofidelity affiliate, signed by Pugliese as the affiliate's chairman. As to category 1, however, defendants declined to produce any documents, objecting that

> [t]o the extent that plaintiff's request refers to financial information, ... such information should not be produced unless and until plaintiff's substantive claims are determined in its favor.

The district court overruled defendants' objection to category 1, and, at pretrial conferences held in June and September 1986, directed defendants to produce the documents. By April 10, 1987, defendants had not complied with these orders, and at a pretrial conference held on that date, the court instructed Luft to move pursuant to Fed.R.Civ.P. 37(b)(2)(C) for an order striking defendants' answer for failure to comply with the court's discovery orders. Though the conference was not transcribed, both sides apparently agree that the court instructed that "[t]he only defense to be permitted in opposition to plaintiff's motion is that defendants have complied with plaintiff's request No. 1 for the production of documents, which seeks manufacturing and sales information with respect to the Judy Garland records and tapes at issue." (Affidavit of defendants' attorney David Blasband, dated April 21,

1987, ¶ 2; *see also* Affidavit of Luft's attorney James J. Harrington, dated April 24, 1987, ¶¶ 2, 3.) Luft promptly served a motion to strike, returnable on April 24.

Defendants opposed the motion, representing that defendants had begun producing documents in Luft's category 1 on April 21. They advised the court that they had not completed discovery earlier because they had been attempting to reach a settlement and to avoid having to undertake, *inter alia,* the time-consuming exercise of identifying and producing documents. Luft's attorney served a reply affidavit which, referring only to documents in category 1, pointed out that even this opposition did not state that defendants had produced all of the required documents. He identified various types of documents, *e.g.,* those relating to the distribution and marketing of the infringing albums, that had not been produced at all. Defendants' attorney submitted a supplemental affidavit dated April 24, stating that additional sales invoices had been produced since April 21 and that "[a]lthough defendant Audiofidelity is still searching for additional documents, I am advised that they believe they have produced all documents which would be responsive to plaintiff's discovery request." (Affidavit of defendants' attorney David Blasband, dated April 24, 1987, ¶ 4.)

In December 1987, the district court granted Luft's motion to strike defendants' answer, stating, in pertinent part, as follows:

> The defendants herein have failed to comply with the plaintiff's appropriate discovery demands. After many unsuccessful attempts at resolution between the parties, I ordered the defendant [*sic*] to comply with the plaintiff's discovery demands. The defendant [*sic*] has refused to comply. At my direction, plaintiff now moves to strike the answer pursuant to Fed.R.Civ.P. 37 and to enter a default judgment against defendants.
>
> . . . .
>
> The plaintiff demands that the defendants produce all documentation concern-

ing its [*sic*] alleged ownership of the recordings and their copyright. Defendants have wholly refused and failed to do so. Instead, the defendants contend that this case should be settled and that they are willing to settle it.

The defendants' willingness to settle a case is clearly not grounds for resisting the mandates of the Federal Rules of Civil Procedure and of this court. The plaintiff's motion to strike the defendants' answer on the grounds that the defendants have failed to comply with the appropriate discovery orders of this court is hereby granted and a default judgment is to be entered against the defendants. This default judgment is to be in two parts. The first part shall be a declaration that as between the parties hereto, the plaintiff is the sole and exclusive owner of the copyrighted materials and that the defendants have no interest in those materials. An inquest will be held before a Magistrate.... At the conclusion of this inquest, the second part of the judgment will be entered against the defendants jointly and severally....

Endorsement dated December 16, 1987 ("December 1987 Decision"), at 1–2.

Defendants moved for reconsideration, arguing, *inter alia,* that the court's statement that defendants had failed to produce documents relating to ownership was erroneous because they had fully complied with the demand for production of that category of documents (category 3) in February 1986. They stated that by the April 24 return date of Luft's motion, they had also fully complied with the request in category 1 for manufacturing and sales records. No mention was made of production of marketing documents. The district court denied the *motion for reconsideration* without comment.

Thereafter, a hearing was held before a magistrate with respect to damages. Prior to the hearing, Luft settled with Crown, and Audiofidelity entered bankruptcy. Since defendants were to be held liable jointly and severally, the proceedings continued against Pugliese alone. Eventually a judgment was entered awarding Luft damages against Pugliese in the amount of $78,000, plus attorney's fees and costs. This appeal by Pugliese followed.

## II. DISCUSSION

On appeal, Pugliese contends principally that the district court abused its discretion in striking his answer. In addition, he contends that it was improper to enter judgment against him for the entire amount of damages and that the assessment of attorney's fees was unwarranted. For the reasons below, we conclude that the order striking the answer cannot be upheld on the basis of the present record, and we vacate the judgment and remand to the district court for further proceedings. In light of this conclusion, we need not reach Pugliese's other contentions.

■ Rule 37(b), entitled "Failure to Comply with Order," provides, in pertinent part, as follows:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> ....
>
> (C) An order striking out pleadings or parts thereof, ... or rendering a judgment by default against the disobedient party; ....

Fed.R.Civ.P. 37(b)(2)(C). Though a sanction so drastic as striking an answer or entering a default judgment is not ordinarily imposed unless the disobedience has been willful, or in bad faith, or otherwise culpable, *see, e.g., Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958), the decision to impose such sanctions is committed to the sound discretion of the district court and may not be reversed absent an abuse of that discretion, *see, e.g., National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (per curiam); *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 882 F.2d 682, 687 (2d

Cir.1989); *Sieck v. Russo*, 869 F.2d 131, 134 (2d Cir.1989).

■ Certain of Pugliese's challenges to the district court's exercise of its discretion to order the striking of his answer have no merit. His contention that "the discovery for which there was alleged non-compliance, was not even directed at Pugliese ..." (Appellant's brief on appeal at 12), is not supported by the record. Pugliese was a named defendant; the document demand requested that "each defendant" produce documents. All of the defendants were represented by the same attorney, and the single response to the document demand was made expressly on behalf of Crown, Audiofidelity, "and Daniel Pugliese." We have seen no indication in the record that Pugliese ever took the position in the district court that the document demand was not directed to him; nor, in light of the record, would such a position have been tenable. We conclude that Pugliese's contention that the discovery was not directed toward him is entirely meritless.

■ Nor is there merit in his contention that defendants' failure to comply with the court's discovery orders could not be deemed willful or culpable. Pugliese concedes that "on June 27, 1986, and September 23, 1986, two conferences were held with the District Court at which time the Court ordered defendants to complete discovery" (Appellant's brief on appeal at 7), and that "[d]efendants failed to complete discovery ..." *id.*, but he argues that the reason for the noncompliance was that the defendants wanted to "settle the matter prior to undertaking the burdensome discovery task," *id.* As the district court stated in its December 1987 Decision, the desire to settle, though laudable, does not excuse a deliberate failure to comply with the express orders of the court.

■ Nonetheless, the district court's December 1987 Decision does not, in light of the record, support the imposition of sanctions. Though the court stated generally that "[t]he defendant [*sic*] has refused to comply" with the court's orders, it specified only one category of noncompliance, stating that "[d]efendants have wholly refused and failed" to produce documents "concerning its [*sic*] alleged *ownership* of the recordings and their copyright." December 1987 Decision at 1 (emphasis added). This finding is belied by the record. Defendants' initial response to Luft's document demand furnished a copy of the 1983 agreement with Tucker pursuant to which defendants claimed that Audiofidelity had become the owner of the copyrights. Thus, the finding that defendants had "wholly refused and failed" to produce documents with respect to ownership is clearly erroneous.

■ Indeed, Luft does not contend on this appeal, and apparently did not contend below, that defendants had failed in any respect to produce documents that related to ownership. Rather, in his reply to defendants' opposition to the motion to strike, Luft stated only that defendants had failed to produce documents in category 1; there was no mention of category 3 or documents relating to ownership. Similarly, on this appeal, he points out that defendants had refused to produce any documents with respect to category 1, which related to the manufacture, sale, marketing, and distribution of the recordings, and he states that the district court ordered defendants to produce "those" documents. Yet as to defendants' production of the documents described in category 1 of the request, the court made no finding whatever.

The district court's instructions at the April 10, 1987 pretrial conference apparently indicated that defendants could successfully defend the Rule 37 motion if, by the return date, they fully complied with the court's prior discovery orders. Pugliese argues that defendants had completed the production of category 1 documents by April 24, 1987, the return date of the motion; Luft disputes this contention. The findings of the district court did not address this issue.

In sum, as to the category of documents in controversy, the court made no findings; as to the category of documents discussed in the December 1987 Decision, the finding is clearly erroneous. We therefore remand to the district court for further findings as

to Pugliese's compliance with the court's discovery orders.

## CONCLUSION

For the above reasons, we vacate the judgment of the district court and remand for further proceedings not inconsistent with this opinion.