**WORLDCOM NETWORK SERVICES, INC., f/k/a Wiltel, Inc., Plaintiff,**

v.

**METRO ACCESS, INC., Defendant.**

**No. 99 CIV. 3998 (WK) (GWG).**

United States District Court, S.D. New York.

Jan. 3, 2002.

GORENSTEIN, United States Magistrate Judge.

Plaintiff Worldcom Network Services, Inc. ("Worldcom") moves for sanctions against defendant Metro Access, Inc. ("Metro") pursuant to Fed.R.Civ.P. 37(b) based on Metro's failure to comply with a discovery order issued by this Court. For the following reasons, Worldcom's motion is granted in part and denied in part.

## BACKGROUND

### The Complaint and Answer

On June 2, 1999, Worldcom filed a complaint in the Southern District of New York alleging Metro owed it approximately $57,377.00 for telecommunication services that Worldcom provided to Metro from 1997 through 1999. *See* Complaint, ¶¶ 15–18. On August 6, 1999, Metro served its Answer on Worldcom, along with a counterclaim, *see* Certification of Good Faith of Marc J. Rachman Pursuant to Fed.R.Civ.P. 37 In Support of Motion for Sanctions, filed March 22, 2000 (docket # 8) at ¶ 3, although (as described further below) the Answer was not actually filed and docketed with the Court until November 26, 2001 (docket # 31). Worldcom filed a Reply to the counterclaim contained in that Answer on September 14, 1999 (docket # 4).

### The March 2000 Motion for Sanctions

After engaging in some initial discovery, Worldcom moved on March 22, 2000, for sanctions against Metro and its attorney asserting that

> despite Plaintiff's counsel's numerous telephone calls and letters to Defendant's counsel, ... two letters to the Court concerning this issue, two conferences with the Court and a Court Order ordering Defendant to provide its responses to the Discovery Requests and serve its written discovery requests on Plaintiff by January 13, 2000, Defendant has failed to provide any response to [plaintiff's] Document Request and has failed to provide answers

Marc J. Rachman, New York City, for plaintiff.

Richard H. Siegel, New York City, for defendant.

---

1. The Order of this Court dated December 14, 2001, and docketed on December 17, 2001(# 38), is hereby vacated and replaced by this Amended Order, which corrects several typographical errors contained in the vacated Order.

sworn to under oath to the interrogatories. Moreover, Defendant has failed to serve any written discovery on Plaintiff. This is despite [defendant's counsel's] representation to [plaintiff's counsel] that Defendant's response to the Document Request was ready on March 13, 2000.

*See* Memorandum of Law, filed March 22, 2000 (docket # 7), at 3. The motion sought sanctions both under Fed.R.Civ.P. 37 and under 28 U.S.C. § 1927 against Metro's counsel personally on the ground that counsel had engaged in "deliberate stalling tactics and ... ignored Plaintiff's counsel['s] numerous good faith attempts to resolve the disputes...." *Id.* at 6. No opposition to the motion was ever filed with the Court.

Instead, on March 22, 2000, at 6:00 p.m., Metro's counsel hand-delivered to plaintiff's counsel, Mark J. Rachman, a verification of the answers to interrogatories along with Metro's response to the plaintiff's document request. *See* Reply Declaration of Marc J. Rachman in Further Support of Motion for Sanctions ("April Reply Decl."), filed April 20, 2001 (docket # 9), at ¶ 3. Metro's counsel told Mr. Rachman that the responses had been "made and collated almost a month ago," although this had not previously been communicated to Mr. Rachman so that his sanctions motion could have been obviated. *Id.* ¶ 5. Mr. Rachman alleged that the document responses were in fact insufficient in that they did not comply with Fed.R.Civ.P. 34(b)'s requirement that they be produced either as they are kept in the ordinary course of business or organized to correspond with the categories of the document request. *Id.* ¶ 6.

On January 25, 2001, District Judge Whitman Knapp granted Worldcom's unopposed motion for sanctions and entered a default judgment against Metro. *See* Order dated April 30, 2001 (docket # 10). On April 2, 2001, Metro's counsel wrote to Judge Knapp stating that he had served discovery responses on plaintiff on March 22, 2000, and asserting that he had had the "distinct impression" that the plaintiff's motion was therefore "moot." In a letter dated April 4, 2001, Worldcom's counsel, Mr. Rachman, asserted that he had specifically told Metro's counsel

that his motion was not being withdrawn and that Metro's counsel in fact informed Mr. Rachman at that time that he would be filing opposition papers. In a letter dated April 13, 2001, Metro's counsel re-asserted that he was under the impression that the motion had been withdrawn. On April 30, 2001, Judge Knapp issued an order vacating the judgment of default and referred the case to the undersigned for all pre-trial purposes (docket # 17).

### The June 25 Order

On June 25, 2001, the parties appeared before this Court for a case management conference. Because of the extraordinary delay in the resolution of this case, the Court impressed upon the parties the need to complete any remaining discovery quickly. After consulting with the parties as to the remaining discovery sought and a reasonable timetable for concluding any such discovery, the Court issued a Pretrial Order that included the following provisions:

1. The defendant shall file its answer, including any counterclaims, no later than June 29, 2001. The failure to file on such date will result in preclusion of the counterclaims.

2. On or before June 29, 2001, the defendant shall serve any discovery request seeking calculation of damages and the identities of persons with knowledge of the claims in this action.

3. The plaintiff shall respond to the requests enumerated in ¶ 2 above on or before July 20, 2001.

4. On or before July 20, 2001, the defendant shall identify in writing each document produced in response to Plaintiff's First Request for Production of Documents to Defendant, dated September 9, 1999.

This identification shall be accomplished by the defendant submitting a response that quotes each of plaintiff's document requests and under each request lists every document that was produced in response to that request. Each document shall be identified by (1) name of sender, if any; (2) name of recipient, if any; (3) date of the document; (4) title of document, if any;

and (4) any other information that clearly identifies the document.

In the alternative, the defendant may re-submit the responsive documents with each document number-stamped. Under each request, the defendant may list the number-stamped page number of every document that was produced in response. Such listing shall follow the quotation of the appropriate document request.

5. Disclosures of the identities and reports of independent experts, if any, as required by Rule 26(a)(2) will be made by July 20, 2001.

6. All pretrial discovery shall be completed by August 17, 2001.

Order filed June 25, 2001 (docket # 21), at 1–2. The Order further provided:

Failure to comply with the terms of this Order may result in sanctions. Any application for an extension of the time limitations herein must be made as soon as the cause for the extension becomes known to the party making the application. The application also must state the position of all other parties on the proposed extension and must show good cause therefor not foreseeable as of the date of this Order. Any application not in compliance with this paragraph will be denied.

*Id.,* ¶ 9.

The Court was unaware of any lack of compliance with its order until August 16, 2001, the day before the discovery cutoff, when counsel for Worldcom wrote to the Court alleging that Metro had failed to comply with the June 25, 2001 Order in several material respects, including failing to file an answer; failing to provide the required designation of documents that specifically identified documents responsive to the plaintiff's document request; and failing to identify an expert. A telephone conference was held on August 17, 2001, at which time the Court gave permission to Worldcom to file the instant motion seeking appropriate sanctions. On September 7, 2001, Worldcom moved for sanctions pursuant to Fed.R.Civ.P. 37(b). *See* Notice of Plaintiff's Motion for Sanctions, dated September 7, 2001 (filed September 25, 2001 (docket # 22)).

On the due date for the response, October 1, 2001, a clerk to the undersigned contacted Metro's counsel to inquire when he intended to respond to the motion for sanctions. *See* Order, dated October 17, 2001, at 2. Metro's counsel stated he had "received an extension" from plaintiff of one additional week to respond to the motion due to ongoing settlement discussions and an intervening religious holiday. *See id.* When no motion papers had been received as of October 10, the clerk again contacted Metro's counsel. *See id.* On October 11, 2001, Metro's counsel returned the call stating to the clerk that "settlement negotiations had broken down" and that he intended to write to the Court requesting an additional conference in lieu of responding to the motion. *See id.* He stated that he would fax and mail out his request by the close of business on October 12, 2001. *See id.*

When no application or opposition to the motion for sanctions had been filed or received as of October 17, the Court issued an order reminding the parties that they were not permitted to "agree" to extend deadlines without court order. *Id.* The Court noted that it could "properly grant the motion for sanctions based on the defendant's default." *Id.* Rather than do so, however, the Court afforded Metro one final opportunity to respond to the pending motion, setting a deadline of October 29, 2001. *Id.*

On October 19, 2001, Metro's counsel faxed a letter to the Court indicating that he had previously "filed with the Court originals of discovery requests" apparently made by Metro, although the docket sheet reflected that no such materials were filed. No mention was made of compliance with any of the other directives contained in the June 25 Order. Metro's counsel also requested a "meeting" with the Court to "see if we can finally agree on new dates to complete discovery." Counsel, however, had never previously sought an extension of the discovery deadline, which had long since passed. The request for a "meeting" was denied by memorandum endorsement (docket # 26). In late October, Metro delivered courtesy copies of its opposition papers to the Court, dated October 26, 2001, although the papers were not filed with the Court until November 26,

2001 (docket # s 32, 35). Worldcom filed a Reply Memorandum and Certification on November 19, 2001 (docket # s 28, 29).

On November 21, 2001, Metro's counsel again wrote the Court stating that the Court had "indicated that a conference on this matter could be scheduled once all papers had been submitted" in the motion for sanctions and requesting that the conference be held. That request was denied due to counsel's failure to specify what relief was being sought. Memorandum Endorsement, filed November 26, 2001 (docket # 37).

*The Motion for Sanctions*

Worldcom's motion for sanctions alleges that following the June 25, 2001, conference, Mr. Rachman contacted Metro's counsel several times informing him that he had not received Metro's discovery requests, its responses to Worldcom's document requests, or the designation of the documents Metro had previously produced (required by paragraph 4 of the June 25 Order). *See* Certification of Good Faith of Marc J. Rachman Pursuant to Fed.R.Civ.P. 37 In Support of Motion For Sanctions, dated September 4, 2001 (docket # 23) ("Rachman Cert.") at ¶¶ 8–11, Exhibits B, D, E. Mr. Rachman has also stated that in a telephone conversation with Metro's counsel on July 9, 2001, shortly after the expiration of the deadline, Metro's counsel stated to Mr. Rachman that Metro's counsel's "assistant must have forgotten to mail" the discovery requests to Mr. Rachman and that Metro's counsel stated he would fax them to Mr. Rachman. This was never done. Reply Certification of Marc J. Rachman In Further Support of Motion for Sanctions, dated November 16, 2001, ¶ 6 (docket # 28). Worldcom's motion papers note that, following the June 25 conference, the parties engaged in some settlement negotiations and that Metro's counsel attempted to rely on those negotiations to explain to Mr. Rachman his failure to engage in discovery. Mr. Rachman noted, however, that he had never indicated that discovery should cease because of the settlement discussions. *See id.* ¶¶ 2–4. Indeed, he repeatedly sent letters to Metro's

counsel seeking the required materials. *See* Rachman Cert., Exhibits B, D, E. Of course, the Court never issued any order altering the deadlines of the June 25 Order.

In sum, Worldcom alleges that Metro did not meet any of the deadlines of the June 25 Order or seek an extension of time in accordance with the order. *See* Rachman Cert. ¶ 7. He also alleges that Metro failed to cooperate in the scheduling of the deposition of Metro's president, James Chladek. *Id.* ¶¶ 8, 10, 12. Worldcom asks the Court to strike Metro's Answer and counterclaim, enter a default judgment in favor of Worldcom, and order Metro to pay Worldcom the costs of this motion. *See* Notice of Plaintiff's Motion for Sanctions, dated September 7, 2001. In the alternative, Worldcom requests that 1) Metro's counterclaim be stricken; 2) Metro be barred from using Mr. Chladek as a witness or using his testimony to oppose Worldcom's claims or support Metro's counterclaim; 3) Metro be barred from using any expert testimony or reports in this case; 4) an adverse inference be drawn with respect to Metro's response to Worldcom's document requests; 5) Metro be barred from serving written discovery requests and 6) Metro be required to pay Worldcom's costs in making this motion. *Id.*

In response, Metro's counsel continues to assert that on June 29, 2001, he timely filed with the court and served upon Worldcom's counsel two of the items at issue: (1) "Defendant's Demands for Document Production," which included a request seeking calculation of damages, and (2) "Defendant's Demands for Names of Witnesses and Expert Witnesses." *See* Metro's Certification of Good Faith, dated October 26, 2001 ("Metro's Cert.") at ¶ 13 (docket # 32). While there was no requirement that such items be filed with the Court[2], the docket sheet indicates that these materials were not filed until November 26, 2001 (docket # 33, 34). Metro's counsel does not indicate whether he served these items by mail or in person. Nor does he explain why he never responded to the letters Mr. Rachman sent him in on July 9,

---

**2.** Indeed, Local Civil Rule 5.1 bars the filing of discovery materials, except in circumstances not applicable here.

2001, July 13, 2001, and July 27, 2001, stating that he never received these items. *See* Rachman Cert., ¶¶ 8, 10, 11; Exhibits B, D, E.

Most significantly, Metro's counsel does not assert that, at any time prior to the filing of the motion for sanctions, he served the very detailed designation of documents required by the Court in paragraph 4 of the June 25, 2001 Order. This is confirmed by implication in his papers filed in opposition to the sanctions motion, in which he stated that he was filing an "additional copy" only of the Answer and of the "Defendant Metro's Demands for Documents and Names and Addresses of Witnesses and Expert Witnesses." Metro's Cert. ¶ 17(a) and 17(b). With respect to the required designation of documents responsive to the plaintiff's document request, he stated only that the designation identifying the responsive documents "will have been filed and served upon opposing counsel" at the time the opposition papers were filed. *Id.* ¶ 17(c). He thus has implicitly conceded that he did not provide this document until after the motion for sanctions was brought. Moreover, the designation of documents is itself dated "October 29, 2001." *See* Defendant's Response to Plaintiff's Request for Production of Documents, filed November 26, 2001, at 4 (docket # 36).

In mitigation of his conduct, Metro's counsel asserts that he failed to file the Answer because he did not have a copy. Metro's Cert. ¶ 9. He also refers generally to settlement discussions between the parties. *Id.* ¶ 18.

*DISCUSSION*

■ Rule 37(b)(2) provides, in relevant part, that if a party "fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, ..." including entering a default judgment or striking pleadings of the culpable party. Fed.R.Civ.P. 37(b). In addition, this Rule provides that in lieu or in addition to other orders "the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds

that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* (emphasis added). A trial court has broad discretion in imposing sanctions under Rule 37. *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam).

■ Sanctions serve three fundamental purposes: 1) preventing a party from profiting from its failure to comply with a discovery order; 2) securing the party's compliance with the order and deterring future misconduct by it; and 3) deterring future litigants from non-compliance with discovery rules and orders. *See Update Art, Inc. v. Modiin Publ'g Ltd.,* 843 F.2d 67, 71 (2d Cir.1988); *Hollingsworth v. City of New York, Dep't of Juvenile Justice,* No. 95–3738, 1997 WL 91286, at *2 (S.D.N.Y. March 4, 1997). As set forth in *Burke v. ITT Automotive, Inc.,* 139 F.R.D. 24 (W.D.N.Y.1991), in crafting an appropriate sanction courts consider: (1) the history of the failure to comply with court orders; (2) whether the party violating the order was given adequate time to comply with it; (3) the effectiveness of alternative sanctions; (4) whether the noncomplying party was warned of and given an opportunity to argue against the proposed sanction; (5) the prejudice to the adversary caused by the failure to comply; (6) whether the documents at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. 139 F.R.D. at 33–36 (citing cases).

■ Application of these factors suggests that a sanction is not only appropriate in this case but required: (1) While there is no prior finding that the defendant has previously failed to comply with court orders, the motion papers in support of the March 2000 motion for sanctions must be viewed in a new light given what has occurred since that time. It is undisputed that Metro's counsel did not serve Metro's original response to Worldcom's document request until Worldcom had filed the formal motion for sanctions in March 2000. *See* April Reply Decl., ¶ 3. With respect to the instant motion, Metro did not even respond to the motion papers, filed

on September 25, until the Court issued its October 17 Order requiring it to do so. (2) The June 25 Order gave Metro sufficient time to provide the required materials inasmuch as they were not due until approximately four weeks after the conference.[3] (3) The Court believes that a sanction of some kind is the only effective way of compensating Worldcom for the costs of bringing this motion and deterring future improper conduct. As noted, this is not the first delinquency on the part of Metro. (4) The Court explicitly warned Metro in the June 25 order as follows:

> Failure to comply with the terms of this Order may result in sanctions. Any application for an extension of the time limitations herein must be made as soon as the cause for the extension becomes known to the party making the application. The application also must state the position of all other parties on the proposed extension and must show good cause therefor not foreseeable as of the date of this Order. Any application not in compliance with this paragraph will be denied.

June 25, 2001 Order, at ¶ 9.(5) The most significant prejudice to the plaintiff resulting from Metro's conduct has been the necessity for plaintiff to file a motion to secure compliance with the Court's June 25 Order. In addition, Worldcom has been delayed in its prosecution of this matter. (6) There has been no contention that the materials required by the Court's order were not readily obtainable by the defendant. (7) The record indicates that Metro's counsel and not Metro itself is responsible for the non-compliance with the June 25 Order.

■ In determining what sanction to impose, the court is mindful that a "sanction so drastic as striking an answer or entering a default judgment is not ordinarily imposed unless the [party's] disobedience has been willful, or in bad faith, or otherwise culpable..." *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir.1990); *accord Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357

U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). "Considerations of fair play may dictate that courts eschew that harshest sanctions provided by Rule 37 where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence." *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.1979); *but see United States Freight Co. v. Penn Central Transportation Co.*, 716 F.2d 954, 955 (2d Cir.1983) (sanction of default judgment upheld where defendant inadvertently failed to comply with a single discovery order because of prior history of dilatory conduct). Moreover, courts should be mindful of the strong preference for deciding a case on the merits. *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990).

Here, all evidence suggests that the failure to comply with the June 25 order was either wilful or represented a cavalier attitude with respect to the Court's deadlines. With respect to the Answer, Metro's counsel admits that he did not comply with the Court's deadline for filing the Answer on the ground that he did not have it. He does not explain, however, why he waited until its due date to determine that this was the case.

The failure to file the Answer, however, is the least significant breach of the June 25 order inasmuch as Worldcom had previously been served with this document. Nor is Metro's own alleged failure to file timely discovery requests of great import because, as described in the next section, it is now too late to compel any response to those requests even if they had been timely served. Instead, the most significant breach relates to the document designation that was due to be served by Metro on July 20, 2001 as required in paragraph 4 of the June 25 Order. This designation was not served until October and only after Worldcom had been compelled to make the instant motion for sanctions. *See* Metro's Cert. ¶ 17(c).

■ The Court would be justified in levying a punitive sanction for this conduct alone. To the extent that the opposition

---

**3.** The only exceptions were the due dates for the filing of the Answer and defendant's discovery demands as to damages. The Answer, however, had been alleged to already be in existence. The very simple discovery demand at issue was obviously easily prepared.

papers suggest that Metro's counsel did not comply with the June 25 Order because he thought the parties were engaged in settlement, *see generally* Metro's Cert. ¶¶ 16, 18, the Court rejects such an explanation as completely inconsistent with the warnings both in the June 25 Order and at the Court conference that the deadlines would be strictly enforced. The law is clear that settlement discussions do not suspend discovery or excuse compliance with an explicit court order. *See, e.g., Luft,* 906 F.2d at 866; *Air–India v. Goswami,* No. 91–7290, 1993 WL 403999, at *10 ( S.D.N.Y. Oct. 5, 1993). Moreover, sanctions are permissible under Rule 37(b)(2) when a party fails to comply with a court order, regardless of the reasons. *See* Fed. R.Civ.P. 37(b)(2); *Societe* 357 U.S. at 208, 78 S.Ct. 1087 (1958) (noncompliance with a discovery order brings Rule 37 into play and the reasons for noncompliance with discovery order "can hardly affect the fact of noncompliance and are only relevant to the path which the District Court might following in dealing with" a party's failure to comply) (construing an even narrower prior version of Rule 37(b)(2)); *David v. Hooker, Ltd.,* 560 F.2d 412, 420 (9th Cir.1977) ("in view of the possibility of light sanctions, even a negligent failure [to obey a discovery order] should come within" Rule 37).

█  Thus, Metro's failure to comply with this aspect of the June 25 order by itself warrants sanctions in this case. The Court has seriously considered the imposition of the sanction of default or dismissal of counterclaims—a sanction that was explicitly contemplated in paragraph 1 of the June 25 Order. On reflection, however, the Court does not believe that the magnitude of Metro's failure rises to the level where a sanction of default or striking of the counterclaim is warranted.

Additionally, although the Second Circuit in *Cine Forty–Second Street Theatre Corp.,* 602 F.2d at 1068, n. 10, noted that "the acts and omissions of counsel are normally wholly attributable to the client," the court also relied on the fact that the disobedient party's principal officer "was aware of every aspect of discovery and intimately involved with the progress of the case." *Id.* Such is not the case here. Here, all evidence suggests that the failure to abide by the June 25 order is not the fault of Metro itself but of Metro's counsel. It would arguably be unfair to punish Metro solely for its attorney's conduct, of which it might not even be aware. *See also Hollingsworth* 1997 WL 91286, at *3 (S.D.N.Y.1997) ("[i]t would be inappropriate to punish the client for the conduct of her attorney, particularly when there is no evidence that the client is aware of the problem"); *accord Patterson v. Grand Blanc Township,* 760 F.2d 686, 688–89 (6th Cir. 1985) (vacating district court's dismissal of plaintiff's complaint after finding that plaintiff's attorney, not plaintiff, was solely responsible for failing to obey discovery orders); *but see Link v. Wabash R.R. Co.,* 370 U.S. 626, 634 n. 10, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (suggesting that proper remedy is for party to sue attorney for malpractice).

Moreover, the Court notes that Worldcom does not appear to be unduly prejudiced by the delays caused by Metro. Worldcom has not alleged that it has lost key pieces of evidence or has been unable to locate witnesses because of the delay. Accordingly, the Court will not enter a default judgment against Metro, dismiss its counterclaim, or grant an adverse inference with respect to any matter. Moreover, because the June 25 order did not specifically address Mr. Chladek, no sanctions will be imposed in connection with his deposition.

Instead, the Court will impose the minimum sanction contemplated by Rule 37 in cases where there has been a failure to comply with a court-ordered discovery obligation: requiring Metro to pay Worldcom the costs of bringing its motion. Rule 37(b) provides that "the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Metro has not met its burden of proving that there was justification for its failure or that there are any circumstances that make such an award of costs unjust. *See, e.g., Poliquin v. Garden Way, Inc.,* 154

F.R.D. 29, 31 (D.Me.1994) (once there has been failure to obey an order, burden is on disobedient party to show failure was justified or that other circumstances make an award unjust). To the contrary, the record suggests that an even greater sanction could be justified. The order requiring Metro to pay the costs of the instant motion is particularly appropriate because the filing of the designation required by paragraph 4 of the June 25 Order occurred only after the motion for sanctions was filed.

■ Pursuant to Rule 37(b)(2), the Court orders Metro's counsel, and not Metro itself, to pay to Worldcom the reasonable expenses, including attorney's fees, associated with making its motion. *See generally Shipes v. Trinity Industries,* 987 F.2d 311, 323–24 (5th Cir.) (imposing sanction on attorney), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993); *Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York,* 129 F.R.D. 462, 467–68 (W.D.N.Y.) (same), *aff'd,* 923 F.2d 843 (2d Cir.1990), *cert. denied,* 500 U.S. 942, 111 S.Ct. 2238, 114 L.Ed.2d 480 (1991). The reason the sanction is imposed on counsel rather than the party is because the failures here are attributable solely to counsel and not to any noncompliance by Metro itself. *See Hollingsworth,* 1997 WL 91286, at *3; *cf. Cronin v. Town of Amesbury,* 81 F.3d 257, 262 (1st Cir.1996) (imposing costs of appeal on attorney not client because the "bulk of the blame for the frivolous appeal rests with appellants' attorney"). Within 14 days of the date of this order, Worldcom shall submit an affidavit to this Court detailing its expenses for bringing this motion (including the number of attorney hours associated with the motion, the basis for the calculation of such hours, and a proposed hourly rate). Metro may respond one week thereafter. The Court will thereupon issue an order directing Metro's counsel to pay a specific amount to Worldcom.

Metro is once again warned that failure to comply with this or future orders will result in additional sanctions, including but not limited to a default judgment entered in favor of Worldcom and the dismissal of Metro's counterclaim. Because of this possibility, the Court is furnishing a copy of this opinion to Metro directly at the address of service. *See Shea v. Donohoe Construction Co.,* 795 F.2d 1071, 1078 (D.C.Cir.1986) (recommending that judges notify party directly that attorney misconduct has occurred and that future misconduct may lead to dismissal before ordering a sanction of dismissal).

*REMAINING DISCOVERY AND CASE MANAGEMENT MATTERS*

As a matter of discovery and case management, and not as a sanction, the Court makes the following additional rulings:

1. Metro asserts that it timely served its "Demand for Production of Documents" and "Demand for Names of Witnesses and Expert Witnesses" on June 29, 2001 (and which Mr. Rachman did not receive until October 2001, long after the discovery deadline). To the extent that Metro's filings and letters to the Court (sent following the end of discovery in this matter) may be construed as an application to compel a response to the two aforementioned discovery requests, any such application is denied as untimely because the discovery cutoff has long since passed.[4]

2. Worldcom is granted leave to serve a notice of deposition requiring that Mr. Chladek appear for a deposition at a time and place convenient to Worldcom within 30 days of the date of this order. Any application by Metro to change the date and time of the

---

4. As noted, there is a factual dispute as to when these documents were in fact served. Because no motion to compel was ever sought prior to the conclusion of the discovery period on August 17, 2001, it is unnecessary for the Court to make any findings as to when the documents were in fact served. Were the Court required to do so, it would find that these categories of documents were not served on Mr. Rachman in compliance with the June 25 Order. The Court bases this finding on the fact that: defense counsel has never given any specifics as to what method he used to serve these documents; the documents were not docketed with the Court until November 2001, despite repeated claims that they had in fact been filed in June 2001; Mr. Rachman informed Metro's counsel in a July 9, 2001, telephone call that he had never received these documents and Metro's counsel suggested that an assistant "must have forgotten to mail" them; and Mr. Rachman wrote repeated letters to Metro's counsel asking when he would be served with these documents—letters that went unanswered by Metro's counsel.

deposition, unless stipulated to in writing by Worldcom's attorney, shall be made prior to the date of such noticed deposition and shall be made by notice of motion or order to show cause in compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court. If Mr. Chladek fails to appear at a properly-noticed deposition, upon written application of Worldcom, Metro will be precluded from using his testimony.

3. With respect to Metro's identification of experts and expert reports, it is unclear whether defendant ever identified any such experts. The "Defendant's Response to Plaintiff's Request for Production of Documents," dated October 29, 2001, and filed with the court November 26, 2001, states that "Defendant has not retained an expert witness at this time, and has not determined whether or not to retain an expert witness at this time." The June 25 Order, ¶ 5, however, required Metro to disclose its expert and any report by July 20, 2001. As discovery has now closed, Metro must be barred from relying on any expert testimony.

4. The parties shall inform each other on or before January 17, 2002, as to whether they intend to file a dispositive motion. Any dispositive pretrial motions shall be served by January 24, 2002.[5]

5. If no party serves a letter indicating that they intend to file a pre-trial motion, plaintiff will supply pretrial order materials to Metro in accordance with the rules of the assigned District Judge on or before January 24, 2002. The pre-trial order shall be filed within 15 days thereafter. If, however, a dispositive motion is served on or before the date in the previous paragraph, the due date of the plaintiff's portion of the pretrial order materials shall be extended to 30 days following decision on the dispositive motion and the pretrial order shall be filed within 15 days thereafter.

6. Failure to comply with the terms of this Order may result in sanctions. Any application for an extension of the time limitations herein must be made as soon as the cause for the extension becomes known to the party making the application. The appli-

cation also must state the position of all other parties on the proposed extension and must show good cause therefor not foreseeable as of the date of this Order. "Good cause" as used in this paragraph does not include circumstances within the control of counsel or the party. Any application not in compliance with this paragraph will be denied.

SO ORDERED.

---

5. The parties shall follow the rules of the assigned District Judge with respect to any pre-

motion conference, filing or other requirements for dispositive motions.