**Curt HAWLEY, Plaintiff,**

v.

**MPHASIS CORPORATION, Defendant.**

No. 12 Civ. 592 (DAB) (JLC).

United States District Court,
S.D. New York.

Signed July 22, 2014.

Michael Gerard O'Neill, Theresa Wade, Michael G. O'Neill, Law Office, New York, NY, Aaron Nathaniel Solomon, The Berkman Law Office, LLC, Brooklyn, NY, for Plaintiff.

Albert O. Kwon, Diya Abraham Mathews, The Chugh Firm, Iselin, NJ, for Defendant.

### MEMORANDUM ORDER

JAMES L. COTT, United States Magistrate Judge.

This is an action to recover damages for unlawful employment discrimination and retaliation on the basis of race brought pursuant to 42 U.S.C. § 1981 and the Kentucky Civil Rights Act. Plaintiff Curt Hawley has moved for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure, alleging that defendant Mphasis Corporation ("Mphasis")[1] failed to perform a good faith search for documents; failed to produce critical information in discovery; failed to preserve certain evidence; and destroyed significant evidence related to Hawley's claims. As a result of this alleged misconduct, he seeks an adverse inference for the purported destruction of the data contained on both his and his supervisor's laptop; an order precluding Mphasis from offering his supervisor's testimony at trial; and the striking of Mphasis's answer. In opposing the motion, Mphasis contends that the sanctions Hawley seeks are inappropriate and would unfairly deprive it of meritorious defenses. For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

### A. Hawley's Complaint and His EEOC Filings

Hawley filed his complaint on January 24, 2012, seeking to recover damages for alleged unlawful discriminatory conduct under 42 U.S.C. § 1981, the New York State and New York City Human Rights Laws, and the Kentucky Civil Rights Act. (Dkt. No. 1).[2] Hawley, a white male, was hired by Mphasis in July 2006 as a general manager to provide support to Mphasis's sales force. Compl. ¶¶ 5, 8–9. Mphasis is in the business of providing computer-related technical services and support. Id. at ¶ 9. Hawley alleges that Mphasis's work force is "overwhelmingly Asian–Indian" and that, upon information and belief, "well under one percent of defendant's employees are non-Indian." Id. at ¶¶ 11–12. Hawley claims that he was subjected to disparate treatment on account of his ethnicity throughout his employment at Mphasis—initially, in Mphasis's failure to integrate him into its business operations, and later, in its failure to provide him with the resources necessary to perform his job functions. Id. at ¶¶ 14–15. Hawley also contends that he was denied commissions for his work because he was not Indian. Id. at ¶ 19.

Hawley alleges that, in early 2009, he was told that he had six months to produce five million dollars in sales. Id. at ¶ 21. As he was not a sales person and did not have a sales quota, but instead was involved in sales support, Hawley claims that this was a "highly unrealistic requirement," but that he nonetheless "put significant effort into meeting this goal." Id. Hawley further alleges that, notwithstanding the ultimatum on sales he

---

1. Defendant refers to itself in some of its papers as Mphasis and in others as MphasiS. In this Memorandum Order, the Court will refer to the Defendant as Mphasis.

2. The parties subsequently stipulated to the dismissal with prejudice of Hawley's New York City and New York State Human Rights Law claims (as well as a counterclaim that Mphasis had asserted). (Dkt. No. 26).

had been given, Mphasis cut him off from resources available to other members of the sales team. *Id.* at ¶ 22. Eventually, in mid-September 2009, he was given a 45–day "performance improvement plan" that, among other things, required him to produce sales of such magnitude that, he contends, it was a "virtually impossible task." *Id.* at ¶ 23.

Hawley filed charges of race and national origin discrimination with the Equal Employment Opportunity Commission ("EEOC") in September 2009. *Id.* at ¶ 24. On November 9, 2009, Mphasis terminated his employment. *Id.* at ¶ 25. After his termination, Hawley filed a second charge with the EEOC, which was mailed to Mphasis on December 3, 2009. *See* Declaration of Aaron N. Solomon in Support of Plaintiff's Motion for Rule 37 Sanctions dated November 20, 2013 ("Solomon Decl.") (Dkt. No. 40), Exhibit ("Ex.") B.

### B. *Hawley's Motion for Sanctions*

In order to understand the basis for Hawley's motion for sanctions, and the nature of the relief that he seeks, certain additional background information is provided below.

### 1. *Hawley's Company–Issued Laptop*

During his employment with Mphasis, Hawley was provided with a company-issued laptop that he was required to use for all Mphasis-related work. *See* Declaration of Curt Hawley dated November 18, 2013 ("Hawley Decl.") (Dkt. No. 39), ¶ 2. Hawley worked remotely from his Kentucky residence and all of his work product, emails, and communications with clients and others at Mphasis were located on the laptop. *Id.* In particular, the laptop contained all of his email communications with Mphasis sales teams, potential clients and vendors, and included information concerning the deals he worked on, the nature and extent of his involvement in the deals, and his complaints regarding Mphasis's failure to pay him commissions. *Id.* at ¶ 3. It also included Hawley's efforts to comply with the performance improvement plan he was given by his immediate supervisor, Kevin DeMilt. *Id.* at ¶ 4.

Hawley periodically used his home computer when his Mphasis-issued laptop was being repaired. *Id.* at ¶ 6. However, pursuant to Mphasis's instructions, he deleted the data from his home computer each time the laptop was fixed and returned to him. *Id.* Nonetheless, Hawley reports that, several months ago, he was able to recover "a portion of the laptop's data" from his home computer, but notes that the recovered data is "merely a subset of the data contained on the laptop." *Id.* at ¶¶ 6–7.

After his employment was terminated, Hawley returned his laptop to Mphasis on December 14, 2009. Solomon Decl., Ex. C (Fed Ex Tracking Record). On January 7, 2010, Mphasis reassigned Hawley's laptop to another employee, permanently deleting all of Hawley's data. Solomon Decl., Exs. D (Email correspondence between Rajesh Chougula and Balwinder Singh dated January 24, 2013), and E (Venkatesh Radhakrishnan Deposition ("Radhakrishnan Dep."), Tr. 79–81).

### 2. *The Laptop of Hawley's Direct Supervisor*

DeMilt also used an Mphasis-provided laptop. Solomon Decl., Ex. F (Deposition of Kevin DeMilt ("DeMilt Dep."), Tr. 20–22). In April 2012, nearly three months after Hawley filed this lawsuit and more than two years after he filed his charges with the EEOC, Mphasis instructed DeMilt (and several others) to preserve all communications or documents in his possession relating to Hawley. Solomon Decl., Ex. G (Email from Janaki Rajagopalan, Associate Vice–President & Lead HR–North America, dated April 12, 2012).

DeMilt subsequently resigned from Mphasis on January 28, 2013. Solomon Decl., Ex. I (Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories dated February 11, 2013, Response No. 2). DeMilt later testified at his deposition on July 22, 2013 that he returned his laptop to Mphasis when he left the company and had never backed up any of the data located on it (nor did he know whether anyone at Mphasis did so). DeMilt Dep., Tr. 21–22. The record before the Court establishes that, once DeMilt returned his laptop, its hard drive was removed and placed in a safe. Radhakrishnan Dep., Tr. 99. However, a subsequent search

of the hard drive associated with DeMilt's laptop revealed that it was clear of any data. *Id.* at Tr. 101–09; *see also* Solomon Decl., Ex. K (Certification of Venkatesh Radhakrishnan dated October 25, 2013, ¶ 4).

Upon learning that DeMilt's hard drive had been erased, Mphasis sent the hard drive to its IT department to determine whether any information could be retrieved. Solomon Decl., Ex. K (Radhakrishnan Certification, ¶ 5). Eventually, Mphasis produced some emails referring to Hawley that it claimed to have recovered from DeMilt's hard drive. *Id.* at ¶¶ 6–8. Mphasis has not identified what other material it searched for, nor has it explained how it conducted its search.

### 3. *Mphasis's Refusal to Produce DeMilt for a Further Deposition*

After discovering that the material on DeMilt's laptop had been erased, Hawley sought to re-open DeMilt's deposition to allow for further inquiry on this subject. At a conference on August 1, 2013, I discussed with Mphasis's counsel making DeMilt available for a continued deposition, and was advised that, even though he was a former employee, Mphasis—whose attorney had represented him at the original deposition— could likely make him available again. Solomon Decl., Ex. M (August 1, 2013 Conference, Tr. 6–8). Discovery was then stayed while the parties attempted to settle the case.

After settlement discussions concluded unsuccessfully, the Court held a status conference on October 9, 2013 to schedule any remaining discovery. At the conference, I re-opened DeMilt's deposition and directed Mphasis's counsel to produce him. Solomon Decl., Ex. N (October 9, 2013 Conference, Tr. 15–19). I set a final fact discovery deadline of October 25, 2013.

On October 15, 2013, Mphasis refused to produce DeMilt for a further deposition, despite the Court's order to do so, because it decided it did not want to pay for it. Solomon Decl., Exs. O (Email from Diya Mathews, counsel for Mphasis, dated October 15, 2013), and P (Letter from Diya Mathews to the Court dated October 18, 2013). Despite

prior representations to the Court to the contrary, counsel for Mphasis wrote the Court a letter dated October 18, 2013 in which she stated that her firm's representation of DeMilt was "indeed limited to the previous deposition, and that we will not be representing him in any further proceedings in this case." *Id.*, Ex. P.

Hawley apparently has not pursued DeMilt's continued deposition, as there is nothing in the record to suggest he has served a Rule 45 subpoena or taken any other action to secure DeMilt's additional testimony.

### 4. *Alleged Deficiencies in Mphasis's Production of its Sales and Commissions Records*

In order to substantiate his claim that Mphasis did not pay him commissions that he was owed and that instead his shares were distributed to other employees of Asian Indian descent, Hawley requested that Mphasis produce records of sales commissions for the projects on which he worked. Solomon Decl., Ex. H (Plaintiff's First Requests for Admissions, Interrogatories, and Production of Documents dated November 28, 2012). After Mphasis failed to produce these records, the Court ordered it to produce records of all commissions paid on deals in which Hawley had been involved. *Id.*, Ex. J (March 12, 2013 Conference, Tr. 18–19). In response to the Court's order, Mphasis contended that no commissions were paid to other staff in sales involving Hawley. *Id.*, Ex. Q (Letter from Albert Kwon dated March 15, 2013, Document Request, Response No. 4). Thereafter, Hawley served a second set of interrogatories and document requests seeking the identification of all sales performed by DeMilt's sales team during the period of Hawley's employment (2006–09), as well as documents showing commissions paid in connection with Mphasis's work for more than 20 corporations during the relevant time period. *Id.*, Ex. R (Plaintiff's Second Set of Interrogatories and Request for the Production of Documents dated May 21, 2013).

Initially, Mphasis refused to provide any information about the DeMilt team's sales on the grounds that the information was confidential. Solomon Decl., Ex. S (Defen-

dant's Responses and Objections to Plaintiff's Second Request for the Production of Documents dated June 21, 2013, Response No. 4) ("Defendant objects to this interrogatory to the extent that it seeks or requires the production or disclosure of confidential or proprietary business information or documentation.").[3] Hawley then challenged the assertion of confidentiality, after which Mphasis claimed that information from the DeMilt team's sales was no longer available. *Id.*, Ex. T (Defendant's More Specific Responses to Plaintiff's Second Set of Interrogatories and Document Requests dated June 28, 2013), at 2. Mphasis also contended that it had no "policy of retaining sales commission records" during the relevant time period. *Id.* at 3. It did, however, produce three pages of a spreadsheet with information regarding commissions relating to its FedEx account. *Id.*

According to Mphasis, its sales operations team, which is based in India, had custody of the information necessary to identify the sales performed by DeMilt's sales team at one time but it is no longer available. Solomon Decl., Ex. U (Defendant's Responses to Plaintiff's July 2, 2013 Supplemental Discovery Requests dated July 11, 2013), at 1. Mphasis also claimed that both sales records and records relating to commissions were located on the laptops of individual employees and not centrally stored, and that these records were deleted when the employees left the company. *Id.* at 2. In any event, DeMilt testified at his deposition that Hawley was not entitled to sales commissions due to the nature and quality of his work, and, in particular, because he "never sold anything." *See* Declaration of Diya A. Mathews in Opposition to Plaintiff's Motion for Rule 37 Sanctions dated December 19, 2013 ("Mathews Decl.") (Dkt. No. 45), Ex. B (DeMilt Dep., Tr. 126).

In order to obtain further information on these subjects, Hawley took a deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Solomon Decl., Ex. V (Amended Notice of Deposition pursuant to Rule 30(b)(6) dated July 2, 2013). Hawley contends, as part of his present application, that Mphasis produced a witness, Venkatesh Radhakrishnan, who was not prepared to address these topics. *See* Memorandum of Law in Support of Plaintiff's Motion for Rule 37 Sanctions dated November 22, 2013 ("Pl. Mem.") (Dkt. No. 38), at 9–10 (citing Radhakrishnan Dep., Tr. 86–98, 114–17, 117–34). As a result of the issues raised by the alleged inadequacies of this Rule 30(b)(6) deposition, the Court gave Mphasis the opportunity to designate a new Rule 30(b)(6) witness in order to fill in gaps that had been left in the previous deposition. Solomon Decl., Ex. N (October 9, 2013 Conference, Tr. at 36–37). Mphasis did not produce another 30(b)(6) witness. *Id.*, Ex. W (October 31, 2013 Email from Diya Mathews).

However, several witnesses did provide testimony regarding Mphasis's records of sales and commissions. Raj Patil, a vice-president of global sales from 2007 to 2009, testified that Mphasis kept records of individual sales deals from 2006 to 2009. *Id.*, Ex. X (July 12, 2013 Deposition of Raj Patil, Tr. 64–66). Contrary to Mphasis's discovery responses, DeMilt testified at his deposition that Mphasis's sales and financial records were, in fact, centrally maintained and that he did not maintain any of them on his laptop. DeMilt Dep., Tr. 55–58. In addition, Murali Rajagopalan, a sales supervisor in North America during the time Hawley was employed by Mphasis, testified that records relating to sales and commissions were kept by several of Mphasis's corporate departments, and that, for each sale, the identity of those involved in the sale would be sent to Mphasis's sales operations and finance departments. Solomon Decl., Ex. Y (July 25, 2013 Deposition of Murali Rajagopalan, Tr. 27–35).

### 5. *Hawley's Arguments in Support of Sanctions*

Hawley argues first that Mphasis's spoliation of his and his supervisor's laptop requires an adverse inference instruction to the jury at the trial in this case. Pl. Mem. at 15–18. He contends that Mphasis was aware of his desire to commence litigation when he provided the company with notice of his sec-

---

**3.** The parties have not entered into a confiden-
tiality stipulation in this case.

ond EEOC filing in December 2009, and therefore, Mphasis had a duty to preserve materials related to him from that time forward. *Id.* at 15. Hawley argues further that it is undisputed that an Mphasis employee intentionally erased all of the data on his laptop, and that this unavailable evidence is relevant to his claims. *Id.* at 16. Because Mphasis has been unable to produce the information contained on his laptop from any other source, Hawley claims that he has suffered prejudice sufficient to warrant an adverse inference instruction at trial. *Id.* at 17–18.

Hawley similarly argues that, because of the destruction of the data on DeMilt's laptop, he has satisfied all of the applicable factors that call for an adverse inference as a result of the unavailability of this information as well. *Id.* at 18. He contends that the contents of DeMilt's laptop are indisputably relevant to his claims and that Mphasis has conceded that the data on DeMilt's laptop was largely destroyed. *Id.*

Beyond the adverse inferences, Hawley seeks an order precluding Mphasis from introducing DeMilt's testimony, either in support of any motion for summary judgment or at trial. *Id.* at 19. He requests this relief as a result of the failure to preserve the information on DeMilt's laptop, as well as Mphasis's disregard of the Court's order directing that DeMilt be produced for a further deposition. *Id.*

Finally, Hawley seeks to have the Court strike Mphasis's answer and enter a default judgment in his favor as a result of Mphasis's purportedly willful violation of the Court's March 12, 2013 Order, and because no lesser sanction would be effective. *Id.* at 23. Although Hawley acknowledges that the striking of an answer is an extreme sanction, he challenges Mphasis's assertion that it does not possess sales or commission records from the relevant time period. *Id.* Hawley adds that precluding Mphasis from introducing evidence of sales and commissions would not be an appropriate sanction, as he needs such records in order to prove his claim regarding his commissions. *Id.* at 24.

### 6. *Mphasis's Opposition to Sanctions*

Mphasis contends in its opposition papers that, because he cannot make out a prima facie case of employment discrimination, Hawley seeks "clearly inappropriate sanctions" solely "in an effort to leverage a settlement." Defendant's Memorandum of Law in Opposition of [*sic*] Plaintiff's Motion for Rule 37 Sanctions dated December 19, 2013 ("Def. Mem.") (Dkt. No. 43), at 1. Mphasis argues that the imposition of sanctions "would not only unfairly punish [it] for terminating an employee who performed poorly, but also unfairly deprive [it] of its meritorious defenses." *Id.*

While Mphasis admits that it removed the data stored on Hawley's laptop, it contends that its intent was not to destroy evidence relevant to Hawley's case, but rather, it was following its ordinary business protocols upon the separation of an employee and the reassignment of that employee's computer. *Id.* at 6. Mphasis also argues that, to the extent Hawley was able to recover data from his home computer backed up from his Mphasis laptop, he is not prejudiced by its failure to recover the entire contents of his laptop. *Id.* at 7. Regarding DeMilt's laptop, Mphasis shifts the blame to DeMilt, explaining that when DeMilt returned his laptop to Mphasis, its contents had already been erased. *Id.* at 10.

Mphasis further argues that Hawley has not demonstrated the need to preclude DeMilt's testimony, noting that its unwillingness to pay for DeMilt's counsel for a further deposition does not prevent Hawley from continuing DeMilt's deposition. *Id.* at 9–10. Mphasis contends that Hawley should have issued a subpoena for DeMilt's testimony instead of filing the instant motion for sanctions. *Id.* at 8–9.

Finally, Mphasis argues that striking its answer would be an inappropriate sanction because it "has acted in good faith throughout this entire process" and lesser sanctions could appropriately remedy any destruction of evidence. *Id.* at 12.

## II. *DISCUSSION*

### A. *Applicable Standards*

Spoliation is "the destruction or significant alteration of evidence, or the fail-

ure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Board of Education,* 243 F.3d 93, 107 (2d Cir.2001) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)). Where a party's misconduct violates a court order, Rule 37(b) allows a court to impose on that party sanctions of varying degrees of severity. Sanctions may include attorney's fees, adverse inferences, preclusion of evidence, striking pleadings, and default judgment. *See* Fed.R.Civ.P. 37(b)(2)(A). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 106–07 (2d Cir.2002). However, a court may not impose sanctions under its inherent power unless the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Cretella v. Liriano,* 370 Fed.Appx. 157, 159 (2d Cir.2010) (quoting *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 136 (2d Cir. 1998)).

■ "The determination of an appropriate sanction ... is confined to the sound discretion of the trial [court], and is assessed on a case-by-case basis." *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y. 2004) ("*Zubulake V*") (quoting *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2d Cir.2001)). Nevertheless, a court should "impose the least harsh sanction that can provide an adequate remedy." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,* 685 F.Supp.2d 456, 469 (S.D.N.Y.2010), *abrogated by Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135 (2d Cir.2012). A court considers several factors when deciding whether to exercise its broad discretion to order sanctions, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of [his] noncompliance." *Agiwal v. Mid Island Mortgage Corp.,* 555 F.3d 298, 302–03 (2d Cir.

2009) (quoting *Nieves v. City of New York,* 208 F.R.D. 531, 535 (S.D.N.Y.2002)).

**B. *Hawley's Requests for an Adverse Inference Are Granted In Part***

■ As the controlling case in this Circuit regarding adverse inference instructions has explained, where a party seeks an adverse inference for spoliation of evidence, he must demonstrate: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding,* 306 F.3d at 107 (quoting *Byrnie,* 243 F.3d at 107–12). Mindful that adverse inferences have serious consequences, *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 219 (S.D.N.Y. 2003) ("*Zubulake IV*"), the Court finds for the reasons discussed below that Hawley has met his burden with respect to the adverse inference instruction he seeks for the destruction of the data on DeMilt's laptop, but not on his own laptop.

■ Reviewing the first factor articulated in *Residential Funding,* courts find that an obligation to preserve evidence arises when a party "has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd.,* 247 F.3d at 436 (citing *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998)). Stated differently, the obligation arises when litigation has commenced or when a party "reasonably anticipates litigation." *Pension Comm.,* 685 F.Supp.2d at 466. "In this respect, 'relevance' means relevance for purposes of discovery, which is 'an extremely broad concept.'" *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 271 F.R.D. 429, 436–37 (S.D.N.Y.2010) (quoting *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y.2004)). "[A] party is well-advised to 'retain all relevant documents (but not multiple identical copies) in existence at the time the duty to preserve attaches.'" *Id.* at 436 (quoting *Zubulake IV,* 220 F.R.D. at 218).

Under the second factor, a party's failure to preserve evidence after the obligation attaches may result in sanctions only if the spoliating party had a "culpable state of mind." A party's state of mind must be evaluated on a case-by-case basis as failures to preserve evidence "occur along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *Residential Funding*, 306 F.3d at 108 (quoting *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir.1999)) (internal citations omitted). In this Circuit, a party manifests a culpable state of mind where "evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it] or *negligently*.'" *Id.* (quoting *Byrnie*, 243 F.3d at 109) (alteration and emphasis in original). Courts may choose to impose sanctions for ordinary negligence because "[i]t is cold comfort to a party whose potentially critical evidence has just been destroyed to be told that the spoliator did not act in bad faith." *Orbit One Commc'ns*, 271 F.R.D. at 438. Where a party seeks to demonstrate intent, that intent need not be directed at spoliation of evidence to the other party's detriment. Rather, any intentional destruction suffices. *See Sekisui Am. Corp. v. Hart*, 945 F.Supp.2d 494, 506 (S.D.N.Y. 2013) ("[A] good faith explanation for the destruction of Hart's ESI ... does not change the fact that the ESI was [intentionally] destroyed.").[4]

Finally, there must be sufficient evidence for a fact finder to conclude that the destroyed evidence was "relevant" to the party's claims or defenses. Relevance "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Residential Funding*, 306 F.3d at 108–09. Rather, "the concept of 'relevance' encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant," *Zubulake V*, 229 F.R.D. at 431, so-called "assistive relevance." *Orbit One Commc'ns*, 271 F.R.D. at 438–40. However, it is important that a court not " 'hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the ... purposes of the adverse inference, and would allow parties who have ... destroyed evidence to profit from that destruction.'" *Residential Funding*, 306 F.3d at 109 (quoting *Kronisch*, 150 F.3d at 128) (alteration in original). Even still, some extrinsic evidence "demonstrat[ing] that a reasonable trier of fact could

---

4. Sanctions for electronically stored information ("ESI") lost "as a result of the routine, good-faith operation of an electronic information system" are governed by Rule 37(e). The rules governing sanctions for ESI (and all other evidence) that has been more culpably destroyed in violation of a court order are found in Rule 37(b). While not applicable in the adjudication of this motion, the Court notes that, in August 2013, the Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States proposed amendments to Rule 37(e) for public comment, which provide a separate sanctions standard for all destruction of ESI. The Standing Committee explained that, "[a] central objective of the proposed new Rule 37(e) is to replace the disparate treatment of preservation/sanctions issues in different circuits by adopting a single standard." Proposed Amendments to the Federal Rules of Bankruptcy and Civil Procedure, at 272 (*available at* http://www.uscourts.gov/uscourts/rules/preliminary-draft-proposed-amendments.pdf). In endeavoring to resolve this circuit split, the Standing Committee explicitly rejected the negligence standard for culpability as articulated in *Residential Funding* and applied in this Circuit. *Id.* This proposed change has not been uniformly endorsed in this District. *See, e.g., Sekisui*, 945 F.Supp.2d at 503 n. 51; Hon. James C. Francis IV, Comment to Committee on Rules of Practice and Procedure (Jan. 10, 2014) (*available at* http://www.regulations.gov/index.jsp#!documentDetail;D=USC–RULES–CV–2013–0002–0395); Hon. Shira A. Scheindlin, Comment to Committee on Rules of Practice and Procedure (Jan. 13, 2014) (*available at* http://www.regulations.gov/index.jsp#!documentDetail;D=USC-RULES-CV–2013–0002–0398). After the comment period, the proposed rule underwent significant revision; however, it retained the fundamental move away from a negligence standard for spoliation sanctions. Standing Committee on Rules of Practice and Procedure, Agenda Book, May 29–30, 2014, at 317–18 (*available at* http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Agenda%20Books/Standing/ST2014-05.pdf#pagemode=bookmarks). As currently written, Proposed Rule 37(e) would allow an adverse inference "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." *Id.* The proposed amendments to Rule 37 have yet to receive Supreme Court approval, but if approved and Congress does not object, the new rule is expected to go into effect in December 2015.

find that the missing [evidence] would support [his] claims" is necessary. *Zubulake IV*, 220 F.R.D. at 221; *accord Reino De Espana v. American Bureau of Shipping*, No. 03–cv–3573 (LTS)(RLE), 2007 WL 1686327, at *6–8 (S.D.N.Y. June 6, 2007), *overruling objections*, 2008 WL 3851957 (S.D.N.Y. Aug. 18, 2008) (no relevance found where party seeking spoliation presented only out of court statements as extrinsic evidence, not deposition testimony); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 200 (S.D.N.Y.2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02–cv–7377 (LAK) (AJP), 2007 WL 1518632 (S.D.N.Y. May 17, 2007) (relevance of deleted emails inferred from other emails recovered); *Zubulake V*, 229 F.R.D. at 427–29 (same).

■■■■ However, "[w]here a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." *Residential Funding*, 306 F.3d at 109. In some circumstances "a showing of gross negligence . . . standing alone" will suffice "to support a finding that the evidence was unfavorable to the grossly negligent party." *Id.; accord In re Terrorist Attacks on Sept. 11, 2001*, 03–MDL–1570 (GBD)(FM), 2013 WL 5788307, at *17 (S.D.N.Y. Oct. 28, 2013); *Sekisui*, 945 F.Supp.2d at 504–05, 509 ("To shift the burden to the innocent party to describe or produce what has been lost as a result of the opposing party's willful or grossly negligent conduct is inappropriate because it incentivizes bad behavior on the part of would-be spoliators."). While prejudice may be presumed upon a showing of bad faith or gross negligence, it is a rebuttable presumption, and the spoliating party has an opportunity to demonstrate a lack of prejudice by, for example, "demonstrating that the innocent party had access to the evidence alleged to have been destroyed or that the evidence would not support the innocent party's claims or defenses." *Pension Comm.*, 685 F.Supp.2d at 469; *accord GenOn Mid–Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 358–60 (S.D.N.Y.2012) (reviewing restored emails to find that larger universe of emails would not have been probative), *aff'd* No. 11–cv–1299 (HB), 2012 WL 1849101

(S.D.N.Y. May 21, 2012); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 25 (S.D.N.Y.2010) *adopted by* 271 F.R.D. 55 (S.D.N.Y.2010).

### 1. Destruction of Data Contained on Hawley's Laptop

■■■■ Applying these standards to this case, the Court concludes, as an initial matter, that Mphasis had an obligation to preserve relevant evidence at least as early as its receipt of Hawley's second EEOC charge on December 3, 2009. Although Mphasis contends Hawley has failed to meet his burden as to each factor of the adverse inference analysis (Def. Mem. at 6), it has not specifically argued against its preservation obligation. While Hawley did not commence the instant action until January 24, 2012, courts in this Circuit regularly find that an EEOC charge puts an employer on notice that it likely faces future litigation. *See, e.g., Adorno v. Port Auth. of New York & New Jersey*, 258 F.R.D. 217, 228 (S.D.N.Y.2009) (duty to preserve arose upon service of EEOC charge); *Zubulake IV*, 220 F.R.D. at 216–17 (same); *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 109 (E.D.N.Y.2012) (duty to preserve "arose no later than" receipt of EEOC charge); *see also Chin*, 685 F.3d at 161 (no dispute that receiving notice of EEOC charge triggered obligation to preserve evidence). Data from Hawley's laptop showing his daily activities and correspondence with other Mphasis employees certainly qualifies as relevant under the broad discovery standards. This evidence would be relevant to both parties' legal theories—for Mphasis, that it had a legitimate, nondiscriminatory reason to terminate Hawley's employment and for Hawley, that it did not. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (laying out burden-shifting framework). As such, when Mphasis erased the data on Hawley's laptop more than a year after receiving notice of his second EEOC charge, it breached its obligation to preserve relevant evidence.

■■■■ Moving to the second *Residential Funding* factor, Mphasis argues that it does not have the requisite culpability because it

deleted the data from Hawley's laptop when the computer was issued to another employee "[a]s a cost-saving and safety measure," and not in "bad faith." Def. Mem. at 6. Mphasis's position reflects a fundamental misunderstanding of the culpability that supports an adverse inference under Second Circuit law. It is well-established that bad faith is not required to merit sanctions. *See Residential Funding*, 306 F.3d at 108. In this Circuit, ordinary negligence will suffice, and "once the duty to preserve attaches, any destruction [of relevant evidence] is, at a minimum, negligent." *Taylor v. City of New York*, 293 F.R.D. 601, 612 (S.D.N.Y.2013) (quoting *Slovin v. Target Corp.*, No. 12–cv–863 (HB), 2013 WL 840865, at *4 (S.D.N.Y. Mar. 7, 2013)). Mphasis concedes that the destruction of data on Hawley's laptop was intentional, and simply attempts to rationalize its actions as part of its normal business practice. Def. Mem. at 6–7. However, a good faith explanation does not absolve a party of its culpability. *See Mastr Adjustable Rate Mortgages Trust 2006–OA2 v. UBS Real Estate Sec. Inc.*, 295 F.R.D. 77, 85 (S.D.N.Y.2013) *aff'd*, No. 12–cv–7322 (HB), 2013 WL 6840282 (S.D.N.Y. Dec. 27, 2013).[5] While there may not be sufficient evidence in the record to support a finding of bad faith, at a minimum, Mphasis's conduct evinces gross negligence, which satisfies the culpability requirement. Mphasis's failure to institute a timely litigation hold does not constitute gross negligence *per se*, *Chin*, 685 F.3d at 162, but the company's failure to institute any of the "widely-recognized steps to preserve" data is an important consideration for a court when evaluating culpability. *Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 419 (S.D.N.Y.2010). Moreover, this is not a situation in which Mphasis simply failed to halt the otherwise automated destruction of records. *Cf. Taylor*, 293 F.R.D. at 613 (automatic re-recording over surveillance tapes

was negligent, but not grossly negligent). Rather, Mphasis decided to treat Hawley—an EEOC complainant—as an ordinary former employee whose laptop was subject to the company's "regular information technology operations protocols," and intentionally wiped his laptop's hard drive before providing it to another employee. Def. Mem. at 3.

Gross negligence may, in certain circumstances, warrant a presumption that the destroyed evidence would have been favorable to the innocent party. *See Residential Funding*, 306 F.3d at 109; *compare Treppel v. Biovail Corp.*, 249 F.R.D. 111, 121–22 (S.D.N.Y.2008) (declining to infer relevance); *and Acorn v. County of Nassau*, No. 04–cv–2301 (JFB)(WDW), 2009 WL 605859, at *5–6 (E.D.N.Y. Mar. 9, 2009) (same); *with Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir.1979) (sanction justified without discussion of relevance where plaintiff's gross negligence stalled litigation for four years). However, Mphasis's conduct with respect to Hawley's laptop was not so egregious as to warrant a presumption of assistive relevance. Hawley must therefore provide extrinsic evidence sufficient for a fact finder to conclude that the destroyed evidence would have been favorable to him. *See Residential Funding*, 306 F.3d at 108–09; *Harkabi*, 275 F.R.D. at 420. On this point, instead of demonstrating that the deleted documents would have benefited him, Hawley asserts only that the documents "would identify the specific deals that the plaintiff worked on" and "the extent of his involvement with each deal," including "the role the plaintiff played within Mphasis." Pl. Mem. at 17. Hawley's decidedly neutral characterization of the destroyed evidence might suffice to satisfy the relevance requirement of Rule 401 of the Federal Rules of Evidence, but does not demonstrate that

---

5. Nor does every intentional act of deletion after the obligation to preserve attaches necessitate a finding of bad faith. While in *Residential Funding*, the Court of Appeals appears in certain places to use "bad faith" and "intentional" interchangeably, 306 F.3d at 109, in others, it does not, *id.* at 110, and distinguishing between intentional acts and those performed in bad faith better comports with the Court of Appeals' earlier holding in *Byrnie*, 243 F.3d at 108, 110 (defin-

ing bad faith as "an intent to obstruct the opposing party's case"). Courts in this Circuit often require something more than the intentional destruction of evidence to support a bad faith finding. *See, e.g., SJS Distribution Sys., Inc. v. Sam's E., Inc.*, No. 11–cv–1229 (WFK) (RML), 2013 WL 5596010, at *4 (E.D.N.Y. Oct. 11, 2013); *Curcio*, 283 F.R.D. at 113 & n. 7; *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F.Supp.2d 378, 413 (S.D.N.Y. 2010).

the documents would support his claims. Indeed, based on Hawley's description, the documents could just as easily support Mphasis's contention that he was a "worthless employee." DeMilt Dep., Tr. 161. Therefore, Hawley has not demonstrated that the evidence on his laptop is "relevant" within the meaning of the third *Residential Funding* factor.

The Court therefore denies Hawley's request for an adverse inference as a result of the destruction of the data contained on his laptop, but it does so without prejudice. If Hawley develops the record with extrinsic evidence sufficient for the Court to re-evaluate whether a reasonable trier of fact could find that the destroyed documents would actually support Hawley's claims, then the Court will reconsider this issue.[6]

### 2. Destruction of Data Contained on DeMilt's Laptop

 By contrast, the Court grants Hawley's motion to the extent that it seeks an adverse inference regarding the destruction of data contained on DeMilt's laptop. Mphasis's failure to preserve DeMilt's hard drive after Hawley initiated the instant action and served his first set of document demands is far less excusable. First, as discussed above, once Mphasis received notice of Hawley's EEOC charge, it had an obligation to preserve relevant evidence. *See Adorno*, 258 F.R.D. at 228; *Zubulake IV*, 220 F.R.D. at 216–17. This obligation was only heightened by Hawley's subsequent commencement of this action.

 Second, Hawley established that Mphasis had the requisite culpability under *Residential Funding*. While, as previously noted, the failure to issue a litigation hold notice does not constitute gross negligence *per se*, a court may " 'consider [the failure to

adopt good preservation practices] as one factor' in the determination of whether discovery sanctions should issue." *Chin*, 685 F.3d at 162 (quoting *Orbit Comm'ns*, 271 F.R.D. at 441) (alteration in original). Here, Mphasis waited until April 10, 2012—nearly three months after Hawley filed this lawsuit and more than two years after he filed his charges with the EEOC—to inform DeMilt and others of their obligation to preserve documents. Mathews Decl., Ex. P (Email from Janaki Rajagopalan dated April 10, 2012). Nevertheless, when Mphasis searched DeMilt's laptop for the first time (on some date after DeMilt's January 2013 resignation, that is, more than a year after Hawley filed his complaint), the hard drive was empty. Radhakrishnan Dep., Tr. 105–12. Mphasis uses this fact to shift the blame to DeMilt, suggesting that DeMilt must have erased the contents of his hard drive. Def. Mem. at 3, 10. For present purposes, however, it does not matter who at Mphasis wiped DeMilt's hard drive; Mphasis should have preserved, reviewed, and segregated relevant data from DeMilt's laptop well in advance of DeMilt's resignation. *See Taylor*, 293 F.R.D. at 612 (any destruction of evidence is negligent at best); *Zubulake V*, 229 F.R.D. at 432 ("it is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."). It appears that Mphasis made no effort to do so, a particularly serious error in light of Hawley's November 2012 document demand which requested correspondence that should have been found on DeMilt's laptop while he was still employed by Mphasis.[7] Solomon Decl., Ex. H (Plaintiff's First Request for Admis-

6. The Court notes that, contrary to Mphasis's contention (Def. Mem. at 4), the fact that Hawley was able to recover on his home computer some but not all of the documents which had been stored on his laptop does not preclude a finding of prejudice. *See Sekisui*, 945 F.Supp.2d at 506 (printed versions of destroyed emails not sufficient to overcome prejudice because they lacked metadata); *Passlogix*, 708 F.Supp.2d at 415–17 (Skype records retrievable from another computer negated prejudice, but description of contents

of deleted email did "not supplant the missing document").

7. The fact that DeMilt's laptop contained responsive documents is demonstrated by the correspondence between Hawley and DeMilt that Mphasis recovered from DeMilt's hard drive. *See* Mathews Decl., Exhibit L (March 11, 2007 email correspondence between DeMilt and Hawley); Oct. 9, 2013 Conference Tr., at 9.

sions, Interrogatories and Requests for the Production of Documents). Based on this record, Mphasis was—at a minimum—grossly negligent.

■ Finally, the company's conduct regarding DeMilt's laptop is sufficiently egregious "to support a finding that the evidence was unfavorable to" Mphasis. *Residential Funding*, 306 F.3d at 109; *accord Chin*, 685 F.3d at 162 ("[A] finding of gross negligence merely permits, rather than requires, a district court to give an adverse inference instruction."). First, Mphasis allowed significant time to elapse before making any effort to preserve relevant evidence—nearly two and a half years after receiving Hawley's EEOC charge and months after Hawley filed the instant action. Then, after the institution of a belated litigation hold notice and the receipt of discovery demands, the company still allowed data on DeMilt's laptop to be deleted. Worse still, during the course of this litigation, Mphasis has been less than forthcoming about the existence *vel non* of the data on DeMilt's laptop. For example, Mphasis did not acknowledge that DeMilt's hard drive had been erased until Hawley deposed the company's Rule 30(b)(6) witness on July 23, 2013—the day *after* DeMilt's deposition. Radhakrishnan Dep., Tr. 112–14; Solomon Decl., Ex. M (August 1, 2013 Conference, Tr. 6–7). Months before that, when the Court ordered Mphasis to produce additional responsive documents, Mphasis's counsel did not mention the possibility that the data had been deleted. Solomon Decl., Ex. J (March 1, 2013 Conference, Tr. 14–15). Nor does Mphasis's counsel's later averral that he only learned of the spoliation at the July 23 deposition—the same time as Hawley—help Mphasis's cause. Radhakrishnan Dep., Tr. 112; August 1, 2013 Conference, Tr. 14 (Dkt. No. 41). Mphasis should have searched DeMilt's laptop when the Court ordered additional discovery in March 2013—if not much earlier—at which point it should have discovered the spoliation and disclosed the same to its counsel, who, in turn, should have informed Hawley and the Court.

■ While the presumption of relevance is rebuttable, Mphasis has not adduced evidence sufficient to overcome the presumption

in these circumstances. For instance, it has not "demonstrate[ed] that [Hawley] had access to the evidence alleged to have been destroyed." *Pension Comm.*, 685 F.Supp.2d at 469. Mphasis was able to recover 328 pages of email from DeMilt's laptop; however, these documents represent only a small subset of the universe of emails and other documents that could have been produced to Hawley but for the spoliation. Def. Mem. at 3–4; Pl. Mem. at 5 (citing Radhakrishnan Certification, ¶ 6). Nor has Mphasis shown "that the evidence would not support [Hawley's] claims or defenses." *Pension Comm.*, 685 F.Supp.2d at 469. In opposition to Hawley's motion, Mphasis includes a single document recovered from DeMilt's computer, which reflects its position that Hawley was not entitled to commissions, at least in connection with the particular deal referenced therein. *See* Mathews Decl., Ex. L (Email correspondence between DeMilt and Hawley dated March 11, 2007). However, Hawley's claims are wider reaching than Mphasis's failure to pay him commissions, let alone on a single deal, and Mphasis has submitted nothing to the Court to demonstrate that Hawley's other bases for discrimination would not be borne out by the spoliated evidence.

For all of these reasons, the Court grants Hawley's motion for an adverse inference against Mphasis with respect to its destruction of the data on DeMilt's laptop.

### C. *Hawley's Request for a Preclusion Order Is Denied*

■ Hawley also seeks an order precluding DeMilt's testimony in support of a summary judgment motion or at trial in light of the spoliation of DeMilt's laptop hard drive and Mphasis's refusal to produce DeMilt for a further deposition. As the Court has already granted an adverse inference with respect to the former conduct, it will focus on the latter for purposes of preclusion. Preclusion has been called an "extreme sanction," and courts are obligated to "consider less drastic responses" before precluding documentary evidence or testimony. *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir.1988). Generally, a court considers the following when evaluating a Rule 37 motion

for sanctions: (1) the willfulness of or explanation for non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the non-compliance; and (4) whether there were warnings about the consequences of non-compliance. *See Agiwal*, 555 F.3d at 302–03. However, "these factors are not exclusive, and they need not each be resolved against the party" opposing sanctions. *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir.2010). In the context of preclusion for violations of Rule 37(c) and (d), courts in this Circuit "also consider the importance of the testimony of the witness and 'the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony.'" *Dragon Yu Bag Mfg. Co. Ltd. v. Brand Sci., LLC*, 282 F.R.D. 343, 345 (S.D.N.Y.2012) (quoting *Reilly*, 181 F.3d at 269); *accord Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir.2006); *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Mar. Antalya*, 248 F.R.D. 126, 158 (S.D.N.Y.2007) (citing *Outley*, 837 F.2d at 590–91). Cognizant of its obligation to consider the efficacy of less severe measures, the Court will not preclude the use of DeMilt's testimony at summary judgment or trial, and instead encourages Hawley to make a more concerted effort to secure DeMilt's attendance at a continued deposition.

The Court first considers Mphasis's explanation for its disregard of the October 9 order to produce DeMilt for further deposition. While its answer is not at all satisfying—particularly given counsel's earlier assurances that Mphasis would be able to produce DeMilt if the Court re-opened his deposition (Solomon Decl., Ex. M (August 1, 2013 Conference, Tr. 6–8))—it also is not entirely unreasonable. DeMilt is no longer an Mphasis employee, and Mphasis should not be penalized too harshly for failing to produce DeMilt, particularly where, as here,

Hawley has at his disposal other means of securing DeMilt's testimony. Arguably, Mphasis's non-compliance "is not due to factors beyond [its] control," *In re Fosamax Products Liab. Litig.*, 06–MDL–1789 (JFK), 2013 WL 1176061, at *2 (S.D.N.Y. Mar. 21, 2013) (internal citations omitted), but the fact that Mphasis was at one point willing to pay DeMilt's attorney's fees does not obligate it to continue to do so. *See U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97–cv–6124 (JGK), 2000 WL 1886593, at *3 (S.D.N.Y. Dec. 29, 2000) (denying request for order to produce former employees for deposition); *accord LeClair v. Napoli Grp., LLC*, No. 10–cv–28, 2011 WL 2517228, at *18 (D.Vt. June 23, 2011). When the Court ordered DeMilt's continued deposition, Mphasis's counsel equivocated on the company's ability to produce DeMilt a second time. Solomon Decl., Ex. N (October 9, 2013 Conference, Tr. 16–19). Segueing into the third consideration—the duration of non-compliance—less than one week after the Court's October 9 order to produce DeMilt, counsel for Mphasis reported that the company was either unwilling or unable to pay for DeMilt's continued representation. Solomon Decl., Exs. O (Email from Diya Mathews, counsel for Mphasis, dated October 15, 2013), and P (Letter from Diya Mathews, counsel for Mphasis, dated October 18, 2013). However, Mphasis's counsel noted that Hawley "may contact [DeMilt] and proceed with the deposition."[8] Solomon Decl., Ex. O (Email from Diya Mathews, counsel for Mphasis, dated October 15, 2013). Taken together, these circumstances do not suggest bad faith by Mphasis.

Importantly, a different, less severe remedy would effectively eliminate any prejudice potentially resulting from the complained-of conduct.[9] As a preliminary matter, this deci-

---

8. Curiously, Hawley has not explained his failure to subpoena DeMilt for testimony after Mphasis confirmed that it would not represent DeMilt at the continued deposition. Here, he "sought the most drastic remedy, preclusion, rather than requesting a recess or continuance" while seeking to subpoena DeMilt. *Outley*, 837 F.2d at 590.

9. While a showing of prejudice is not required, *S. New England Tel. Co.*, 624 F.3d at 148–49, a

court may certainly consider it. *See, e.g., Design Strategy*, 469 F.3d at 297 (considering prejudice); *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, No. 09–cv–4286 (LAK) (JCF), 2011 WL 1453797, at *3–4 (S.D.N.Y. Apr. 11, 2011). Here, Hawley has not presented any evidence to support a finding that he would suffer prejudice were DeMilt's testimony allowed. To the extent DeMilt already sat for a deposition, Hawley had the opportunity to examine him fully on the

sion already imposes a sanction with respect to the spoliation of DeMilt's laptop. As for the aborted continuation of DeMilt's deposition, the Court is mindful that "[a] trial ideally is a search for the truth," *Portuondo v. Agard*, 529 U.S. 61, 77, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) (Ginsburg, J. dissenting), and while spoliation can interfere with that inquiry, so too, can an overbroad sanction. Based on the evidence already in the record, it is likely that DeMilt's testimony will be crucial. For Mphasis, DeMilt would present the counterpoint to Hawley's testimony that his adverse treatment resulted from racial discrimination, not poor job performance. Def. Mem. at 9 (quoting DeMilt Dep., Tr. 114, 161). However, DeMilt's testimony may not be one-sided; for Hawley, DeMilt may provide useful evidence on Mphasis's record-keeping practices with respect to commissions. Pl. Mem. at 10 (quoting DeMilt Dep., Tr. 55–58). Although the cut-off date for discovery has passed, Scheduling Order (Dkt. No. 31), a briefing schedule has not yet been set for summary judgment motions nor has a trial date been fixed. While the Court is hesitant to re-open discovery, DeMilt's continued deposition need not occupy much time. Mphasis does not contest that Hawley "is entitled to the further deposition of DeMilt as ordered by the Court." Def. Mem. at 11; *see Outley*, 837 F.2d at 591 (party opposing preclusion offered continuance). Hawley is free to subpoena DeMilt for his testimony on the spoliation of his laptop, and is encouraged to do so. To that end, the Court will re-open discovery for 30 days from the date of this Memorandum Order for the limited purpose of continuing DeMilt's deposition and directs Mphasis to provide to Hawley forthwith the last known address and other contact information (including email) for DeMilt. Additionally, Mphasis shall bear the costs of the court reporter for DeMilt's continued deposition.

### D. *Hawley's Request for an Order Striking the Answer Is Denied*

Finally, Hawley argues that, as a consequence of Mphasis's failure to provide its sales and commission records, the Court should strike Mphasis's answer, effectively rendering a default judgment against the company. "Dismissal under Rule 37 is an extreme sanction, to be imposed only in extreme circumstances." *Kyoei Fire & Marine Ins. Co.*, 248 F.R.D. at 143 (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734 (2d Cir.1987)); *accord Wilson v. Pasquale's DaMarino's, Inc.*, No. 10–cv–2709 (PGG), 2013 WL 1195603, at *6 (S.D.N.Y. Mar. 25, 2013) ("default judgments a[re] 'the most severe sanction which the court may apply' ") (quoting *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243, 249 (2d Cir.1996)). Accordingly, "a 'sanction so drastic as striking an answer or entering a default judgment is not ordinarily imposed unless the [party's] disobedience has been willful, or in bad faith, or otherwise culpable....' " *Worldcom Network Servs., Inc. v. Metro Access, Inc.*, 205 F.R.D. 136, 142 (S.D.N.Y.2002) (quoting *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990)); *accord Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir.2007) (discussing dismissal sanction). Moreover, although a court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record," *S. New England Tel. Co.*, 624 F.3d at 148, an answer should be stricken "only when the [court] has considered lesser alternatives." *S.E.C. v. Razmilovic*, 738 F.3d 14, 24 (2d Cir.2013) (quoting *S. New England Tel. Co.*, 624 F.3d at 144).

Here, Hawley seeks a litigation-ending sanction, but fails to articulate why a lesser sanction would not be appropriate instead. Hawley first asserts that another order from the Court mandating the production of sales

---

substance of his claims. With respect to DeMilt's role—or lack thereof—in the spoliation of his laptop hard drive, the Court previously ordered DeMilt's deposition re-opened, minimizing any prejudice that Hawley might have suffered had DeMilt's testimony been used without providing Hawley the opportunity to pursue this topic.

Solomon Decl., Ex. M (August 1, 2013 Conference, Tr. 15–19). Once Hawley has the opportunity to question DeMilt about his role, if any, in the spoliation, it is not clear what prejudice Hawley would suffer in the use of DeMilt's testimony.

and commission records would be ineffective in light of "the sheer brazenness of [Mphasis's] conduct." Pl. Mem. at 25. The Court is inclined to agree that such an order would be meaningless, particularly given Mphasis's most recent statements that they no longer have copies of the records in question. *See* Def. Mem. at 12; Solomon Decl., Exs. T (Defendant's More Specific Responses to Plaintiff's Second Set of Interrogatories and Request[s] for the Production of Documents dated June 28, 2013), and U (Defendant's Responses to Plaintiff's July 2, 2013 Supplemental Discovery Requests). Hawley also contends that an order precluding Mphasis from introducing these records at trial would harm him more than Mphasis. Pl. Mem. at 24.

■■ Notably, however, Hawley skips over the intermediate sanction of an adverse inference for spoliation, presumably because he disbelieves Mphasis's response that it no longer has copies of these records.[10] Although adverse inference instructions "usually [are] employed in cases involving spoliation of evidence," a court also may grant an adverse inference instruction for the non-production of evidence. *Residential Funding*, 306 F.3d at 107; *In re Terrorist Attacks on Sept. 11, 2001*, 03–MDL–1570 (GBD)(FM), 2013 WL 5788307, at *7–8 (S.D.N.Y. Oct. 28, 2013). Indeed, *Residential Funding* was decided in the context of a party's failure to produce documents in time for trial. Applying the *Residential Funding* test for adverse inference instructions discussed *supra* at 46, the Court finds that an adverse inference instruction regarding Mphasis's non-production of sales and commission records is the appropriate sanction for this misconduct.

■■ "To satisfy the First element [of the test], there must be proof that either the nondisclosing party was obligated by Rule 26 or a court order to produce the materials." *In re Terrorist Attacks on Sept. 11, 2001*, 2013 WL 5788307, at *2. Here, Mphasis had an obligation to produce the requested sales and commission records. Hawley's first and second sets of discovery demands requested documents reflecting sales commissions paid to Mphasis employees for sales in which Hawley participated. Solomon Decl., Exs. H, R. On March 12, 2013, the Court ordered Mphasis to produce the sales and commission data. Solomon Decl., Ex. J (March 12, 2013 Conference, Tr. 18–19). At the March 12 conference, Mphasis had argued that it was not obligated to produce sales and commission data because Hawley was a uniquely-situated employee who was not entitled to commissions and, therefore, records of the commissions paid to other employees would not be probative. *Id.* Although the Court unequivocally rejected that excuse, *id.*, Mphasis raises it again in opposition to Hawley's motion. Def. Mem. at 13. One of Hawley's contentions is that Mphasis discriminated against him by failing to pay him the commissions to which he was entitled. Compl., ¶¶ 18–19. The requests for documents to support this claim are "well within the scope of permissible discovery," *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 253 (S.D.N.Y.2012); it is not for Mphasis to decide—in violation of this Court's order—what may or may not be useful to Hawley in developing his case.

■■ Regarding Mphasis's culpability, the record is sufficient for the Court to find that Mphasis's failure to produce the requested records was in bad faith. Not only has Mphasis failed to produce the sales and commission records that Hawley seeks, but from

---

**10.** In its most recent discovery response, Mphasis explained that the records "were deleted on an ongoing basis as individuals transitioned in and out of Defendant's employ.... Defendant's records were stored on individual employees' computers and not backed up to a central server. As individuals transitioned in and out of the company's employ, their computers were repurposed, deleting any previously held records." Solomon Decl., Ex. U (Defendant's Responses to Plaintiff's July 2, 2013 Supplemental Discovery Requests, Response No. 5), at 2. Hawley is un-

derstandably skeptical that a company as large and sophisticated as Mphasis would not retain in some central location data on its sales and commissions. Pl. Mem. at 23. Hawley also grounds his disbelief in the deposition testimony of DeMilt and other former Mphasis employees, who each testified that they sent sales records to Mphasis's corporate office. Pl. Mem. at 10–11 (citing DeMilt Dep., Tr. 55–58; Solomon Decl., Exs. X (July 12, 2013 Deposition of Raj Patil, Tr. 64–65), and Y (July 25, 2013 Deposition of Murali Rajagopalan, Tr. 29–35)).

the beginning of this litigation, Mphasis has given Hawley and the Court the runaround regarding this failure. Mphasis has, at various times, argued that the requested records: (1) are irrelevant (Solomon Decl., Ex. J, Tr. 18–19); (2) never existed (*id.*, Ex. Q); (3) are not subject to production because of confidentiality (*id.*, Ex. S); (4) do not exist in the form sought by Hawley (*id.*, Ex. S); and (5) existed but were destroyed (*id.*, Exs. T, U).[11] Then, at a conference before the Court in October 2013, after the case had been pending for more than a year and a half, counsel for Mphasis made statements suggesting Mphasis still had not engaged in any search for the requested documents. October 9, 2013 Conference, Tr. 28 ("Mphasis has very clearly said they may not have records going back beyond three years, so I cannot promise that he will be able to find something. . . .").

While a Rule 30(b)(6) witness should have been able to provide clarity to Mphasis's ever-shifting position, Mphasis produced a deponent who was not particularly knowledgeable about the company's sales and commission records. Radhakrishnan Dep., Tr. 93–98, 115–34. After Hawley brought this problem to the Court's attention, Mphasis failed to produce another Rule 30(b)(6) witness on this topic despite the Court giving it an opportunity to do so. Solomon Decl., Ex. W (Email correspondence from Diya Mathews to Aaron Solomon dated October 31, 2013). The totality of Mphasis's behavior belies its contention that it "has acted in good faith throughout this entire process." Def. Mem. at 12. *See, e.g., Chevron Corp. v. Donziger*, 296 F.R.D. 168, 222 (S.D.N.Y.2013) (bad faith demonstrated by varied, legally-insufficient excuses); *Short*, 286 F.R.D. at 254 (repeated refusal to turn over relevant documents in violation of court order evidenced bad faith); *PSG Poker, LLC v. DeRosa–Grund*, No. 06–cv–1104 (DLC), 2008 WL 190055, at *12 (S.D.N.Y. Jan. 22, 2008) ("fail-

ure to either produce relevant documents or a credible story regarding their whereabouts—despite the admonitions of this Court and repeated requests from the plaintiffs—can only be interpreted as an intentional and willful act").

Finally, the sales and commissions records that Mphasis failed to produce are relevant to Hawley's case. Because the Court finds that Mphasis acted with bad faith, "that bad faith alone is sufficient circumstantial evidence" to support an inference that the evidence was relevant. *Residential Funding*, 306 F.3d at 109. "Even conduct characterized as . 'purposeful sluggishness,' or intentional delay, can support a finding of relevance, as can intentional acts that 'hinder discovery.' " *Short*, 286 F.R.D. at 254 (quoting *Residential Funding*, 306 F.3d at 110). Therefore, the Court concludes that the fact finder may, without more, determine that the sales and commission records that Mphasis has failed to produce would have supported Hawley's claims. Mphasis has presented nothing to rebut this presumption other than speculative arguments of counsel.

Moreover, it seems that, based on the extant record, there is reason to believe that the sales and commission records would, in fact, support Hawley's claims, even though it is not entirely clear what form Hawley's argument regarding commissions will take. To the extent Hawley argues that he was denied commissions for discriminatory reasons, Mphasis concedes that Hawley was not paid commissions, but only because he was not entitled to them. DeMilt Dep., Tr. 127; Solomon Decl., Ex. J (March 12, 2013 Conference, Tr. 18). The only example of commission records that Mphasis has produced to date supports this non-payment argument, and given Mphasis's concession, it would stand to reason that any other records Mphasis produced would similarly reflect no payments made to Hawley. To the extent that

11. Given Mphasis's constantly changing positions on the existence of the sales and commission records, the Court cannot say with confidence that these records do or do not exist. That said, whether Mphasis deliberately violated this Court's March 12 order by failing to produce extant business records or it failed to retain these relevant documents during the pendency of litigation against it. the analysis is the same. As outlined in *Residential Funding*, the test for an

adverse inference instruction for spoliation is virtually identical to the test for the non-production of evidence. *Residential Funding*, 306 F.3d at 107; *see also In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y.2007) ("[a] failure to disclose under Rule 37 encompasses both the destruction of evidence, or spoliation, and untimely production of documents and information required to be produced.").

Hawley intended to use these records to argue that other similarly-situated Mphasis employees received commissions, there is evidence in the record to support this contention as well. While DeMilt testified that Hawley was not entitled to commissions because "he never sold anything," DeMilt Tr., 127, Murali Rajagopalan, an Mphasis sales supervisor, testified that other sales support employees at Mphasis, including subject matter experts (which is how Hawley has characterized his role), were entitled to commissions either personally or from the "deal pool" as divvied up by the sales leader. Solomon Decl., Ex. Y (July 25, 2013 Deposition of Murali Rajagopalan, Tr. 48–53).

Accordingly, the Court finds that an adverse inference against Mphasis is warranted for the company's failure to produce the sales and commissions records Hawley has requested.

### III. CONCLUSION

For the foregoing reasons, Hawley's motion for sanctions under Rule 37 is granted in part and denied in part. In due course, the parties shall confer on the wording of appropriate adverse inference instructions to be provided to the jury at trial, and provide proposals to Judge Batts as part of their pretrial submissions. Hawley is awarded the costs of this motion, including reasonable attorneys' fees, to be determined at the conclusion of the case.[12]

Discovery is re-opened for 30 days for the limited purpose of the continued DeMilt deposition. The Court will hold a status conference on September 8, 2014 at 10:30 a.m. in Courtroom 21D, United States Courthouse, 500 Pearl Street, New York, New York.

The Clerk of the Court is directed to close docket entry number 37.

**SO ORDERED.**

---

**12.** This suit is brought under 42 U.S.C. § 1981, which contains a fee-shifting provision under 42 U.S.C. § 1988. Accordingly, it is most efficient to defer final determination of the amount to be paid in connection with this motion until the conclusion of the case, when, if Hawley prevails, a comprehensive analysis of fees will be necessary. *See Cunningham v. Hamilton Co.*, 527 U.S. 198, 201, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999) (trial court may defer assessment of fees until after trial).